IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ELVERT S. BRISCOE, JR., | ) | CASE NO. 1:02CV2393 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE NUGENT |
| v. | ) | |
| | ) | MAGISTRATE JUDGE HEMANN |
| MARGARET BAGLEY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).  Before the court is Elvert S. Briscoe Jr.'s ("Briscoe") petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 on January 2, 2003.  Briscoe is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to a journal entry of sentence in the case of *State of Ohio vs. Elvert Briscoe*, Case No. CR 364077 (Cuyahoga County 1999).  For the reasons set forth below, the magistrate judge recommends that the petition be denied.

I

The May 1998 term of the Cuyahoga County grand jury indicted Briscoe on four counts of rape of a minor by force.  Briscoe pleaded not guilty to all counts.  One count of vaginal rape was dismissed prior to trial.  The state appellate court hearing Briscoe's direct appeal found the following facts in rejecting Briscoe's direct appeal:

On June 16, 1998, Brisco[1] was charged with three counts of vaginal rape and

_____

[1] This spelling of Briscoe's name is used in some of the state court decisions.

one count of anal rape in violation of R.C. 2907.02.  The alleged victim, R., was Brisco's cousin's daughter, who was seven years old at the time of the offenses, believed to be December 23, 1995.  From the record we glean the following: Herbert Brisco, R.'s maternal grandparent, lived in an efficiency apartment at 15600 Terrace Road in East Cleveland, which consisted of one large room, a kitchen and a bathroom. Following a stroke, he was confined to a wheelchair but returned to his apartment in November of 1995 and was assisted by his nephew Brisco, then aged 28 years, who slept in either a roll-away cot or on a Lazy-Boy recliner.

On December 23, 1995, R. and her sister T. then age five years, were to spend the night with their grandfather.  On July 30, 1997, R. told her mother that on that December night she had been sleeping at the foot of her grandfather's king-size bed while T. was sleeping at the top.  She claimed that she awoke to find that Brisco had taken her to the recliner and penetrated her vagina.  He then followed her to the bathroom and demanded that she fellate him, but she refused.  He then raped her a second time while holding her on the bathroom sink.  She stated he then made her sit on his lap on a chair in the large room and she was able to return to her bed only because her grandfather woke up, asked what was going on and ordered her back to bed.  R. stated she didn't tell anyone at the time because Brisco had promised to give her a Barbie doll and some money if she kept the secret.

Upon hearing these details, R.'s mother notified police and took the child to the emergency room at University Hospital.  However, because the incident occurred nineteen months before, no direct physical evidence was found.  The physician on duty noted in his records that R.'s mother indicated that vaginal and rectal penetration had only been attempted.

J.W.[,] a male cousin, three years older than R., testified that R. disclosed the rape to him within two months, sometime in January 1996.  He stated that R. asked him to keep the event a secret, and that he did so until R. disclosed the rape to her mother.

Marsha Thompson, a pediatric nurse practitioner, testified as an expert for the State.  An assistant county prosecutor had suggested to the East Cleveland police that Thompson be consulted.  She testified that she conducted an interview with R. and her mother and physically examined R. on August 18, 1997.  Based on her physical examination, which showed some stretching of hymenal tissue and flattening of "rugae" or vaginal folds, Thompson expressed the opinion that R. had been the victim of sexual abuse. On cross-examination, she rendered an opinion that the physical findings were caused by more than one event of penetration, although she was unable to estimate how many episodes it would take to result in the physical findings she reported. Thompson admitted that R.'s physical manifestations were inconsistent with a single episode of sexual abuse that would have occurred nineteen or twenty months before her August, 1997 examination, both because the stretching and flattening appeared to have been caused by more than one event, and because any flattening caused by an event that long ago should have healed, at least significantly more than it had by the time of Thompson's exam.

After allowing Brisco's lawyer to establish a foundation, the judge prevented him

2

from asking Thompson for an opinion on whether R. had been the victim of repeated sexual penetration since December 23, 1995, when she sustained the State's objections to such questions.  The judge also sustained the State's objections to Brisco's lawyer's closing argument on the issue, foreclosing a submission that R.'s physical condition was caused by something other than a rape by Brisco. The grounds for the objection were not stated.

*State of Ohio v. Brisco*, Case no. 76125 (Ohio App. Ct. September 5, 2000), pp. 2-5.  The court granted a motion for acquittal pursuant to Ohio Crim. R. 29 as to the count of anal rape.  A jury found Briscoe guilty on the remaining two counts.  On February 8, 1999 the court sentenced Briscoe to life in prison as to each count, the sentences to be served concurrently.  After a hearing the court also found Briscoe to be a sexual predator.  Briscoe moved for a new trial on February 19, 1999, and the court denied the motion on March 19, 1999.

Briscoe filed a timely motion of appeal on March 11, 1999.  In his brief in support of his motion, Briscoe asserted three assignments of error:

First Assignment of Error
The verdicts are against the weight of the evidence.

Second Assignment of Error
The trial counsel erred by sustaining the state's objections to the appellant's closing argument.

Third Assignment of Error
The trial court erred by allowing improper hearsay through witness testimony and from the medical records.

The appellate court overruled Briscoe's assignments of error and affirmed the judgment of the trial court on September 5, 2000.

On December 17, 1999 Briscoe filed in the trial court a timely petition to vacate or set aside his sentence.  On December 27, 1999 Briscoe filed a motion asking the court for findings of fact and conclusions of law in responding to his petition for postconviction relief,

3

and Briscoe filed a supplement to his petition on January 10, 2000.  The trial court treated

Briscoe's filings as a petition for postconviction relief and a petition to vacate, and it denied

both petitions without opinion on February 29, 2000.

Briscoe filed an appeal of the denial of his petition for postconviction relief and petition

to vacate on April 4, 2000.  The appellate court dismissed his appeal as untimely on May 1,

2000.  Briscoe moved the court to reconsider its dismissal, showing that he had mailed the

appeal timely, and the court reinstated his appeal on May 10, 2000.  After considering

Briscoe's arguments in support of his appeal, the appellate court affirmed the judgment of the

trial court on December 4, 2000.  Briscoe did not appeal this decision to the Ohio Supreme

Court.

On October 9, 2000 Briscoe timely filed in the Ohio Supreme Court a notice of appeal

of the appellate court's overruling of his assignments of error on direct appeal.   In his

memorandum in support of jurisdiction Briscoe advanced the following propositions of law:

> **Proposition of Law No. I**:  The verdicts are against the weight of the evidence and
> violative of Due Process.
>
> **Proposition of Law No. II**:  The trial court erred by sustaining the state's objections
> to Appellant's cross-examination and closing arguments.
>
> **Proposition of Law No. III**:  The trial court erred by allowing improper hearsay
> through witness testimony and medical records, which denied appellant's rights under
> the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution.
>
> **Proposition of Law No. IV**:  Appellate counsel denied appellant effective assistance
> of counsel guaranteed by the Sixth Amendment to the U.S. Constitution.

(Punctuation altered from the original.)  The Ohio Supreme Court denied Briscoe leave to

appeal and dismissed the appeal as not involving any substantial constitutional question on

4

January 24, 2001.

On November 20, 2000 Briscoe applied in the appellate court pursuant to Ohio App. R. 26(B) ("R. 26(B)") to reopen his direct appeal.  Briscoe asserted seven assignments of error in support of his motion:

Assignment of Error I:  Appellant was denied effective assistance of appellate counsel, guaranteed by the Sixth Amendment of the U.S. Constitution.

Assignment of Error II:  Trial counsel denied Appellant effective assistance of counsel guaranteed by the Sixth Amendment of the U.S. Constitution.

Assignment of Error III:  Trial court denied Appellant his Constitutional rights of effective assistance of counsel, a fair trial and impartial tribunal.

Assignment of Error IV:  Trial court's failure to make a complete and accurate records [sic] of trial proceedings denied Appellant Due Process and a fair appeal as of right.

Assignment of Error V:  Trial counsel denied Appellant his Sixth Amendment right of effective assistance of counsel, guaranteed by the U.S. Constitution.

Assignment of Error VI:  Appellant was denied effective assistance of appellate counsel, guaranteed by the Sixth Amendment of the U.S. Constitution.

Assignment of Error VII:  Trial court denied Appellant his rights to effective assistance of counsel and Due process guaranteed by the U.S. Constitution.

Briscoe filed a subsequent Delayed Application for Reopening pursuant to R. 26(B) on July 20, 2001 in which he asserted an additional four assignments of error:

Assignment of Error I:  Trial counsel denied Appellant effective assistance of counsel, which denied Appellant his rights under the 5th, 6th, and 14th Amendments of the U.S. Constitution and Article I § 10 and 16 of the State of Ohio Constitution.

Assignment of Error II:  Appellant was denied his rights to a fair trial by prosecutor misconduct in the state's rebuttal closing arguments, under the 5th and 14th Amendments to the U.S. Constitution.

Assignment of Error III:  The trial court erred to the prejudiced [sic] of the Appellant, which denied his rights to a fair trial and effective assistance of counsel under the 5th,

5

6th, and 14th Amendments to the U.S. Constitution and Article I § 10 and 16 to the State of Ohio Constitution.

<u>Assignment of Error IV</u>: Trial counsel denied Appellant effective assistance of counsel, which denied Appellant his rights under the 5th, 6th, and 14th Amendments to the U.S. Constitution and Article I § 10 and 16 to the State of Ohio Constitution.

(Punctuation altered from the original.) On August 9, 2001 the appellate court addressed all eleven assignments of error asserted by Briscoe. The court found that all of Briscoe's assignments of error were barred by the doctrine of *res judicata* and also found that they were without merit. The court denied, therefore, Briscoe's applications to reopen. On August 10, 2001 Briscoe filed a motion for leave to amend his application to reopen, and the appellate court dismissed his motion as moot on September 17, 2001. On August 21, 2001 Briscoe filed in the appellate court a motion to reconsider its judgment entry of August 9, 2001. The court denied this motion on September 17, 2001, noting that a motion to reconsider was not applicable to the denial of an application to reopen.

On August 27, 2001 Briscoe filed in the trial court a motion for judgment entry and requested a hearing. Briscoe sought an order directing the court reporters to correct and certify transcripts in his case and to transmit those corrected transcripts to the court of appeals. The trial court denied this motion on September 19, 2001. On November 2, 2001 Briscoe moved for findings of fact and conclusions of law related to his motion for judgment entry, and the trial court denied this motion on December 10, 2001.

On September 13, 2001 Briscoe filed in the Ohio Supreme Court a notice of appeal of the appellate court's denial of his motion to reopen. In his appeal Briscoe advanced four propositions of law:

6

PROPOSITION OF LAW NO. I:

APPELLANT IS GUARANTEED RIGHT TO COUNSEL ON APPLICATION FOR REOPENING, APP. R. 26(B), BY THE SIXTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION.

PROPOSITION OF LAW NO. II:

APPELLATE COUNSEL DENIED APPELLANT EFFECTIVE ASSISTANCE OF COUNSEL, GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION.

PROPOSITION OF LAW NO. III:

APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THE TRIAL COURT ERRED [sic] TO THE PREJUDICE OF THE APPELLANT BY ALLOWING IMPERMISSIBLE EXPERT TESTIMONY TO VERACITY [sic] AND BOLSTER CREDIBILITY OF CHILD VICTIM, UNDER THE SIXTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION.

PROPOSITION OF LAW NO. IV:

APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE PROSECUTOR'S MISCONDUCT IN REBUTTAL CLOSING ARGUMENTS, UNDER THE SIXTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION.

Briscoe filed a motion to stay the proceedings on October 10, 2001.  On November 7, 2001 the Ohio Supreme Court dismissed Briscoe's appeal as not involving any substantial constitutional question.

On August 16, 2002 Briscoe filed in the trial court a motion for leave to file a second petition for postconviction relief.  The trial court denied this motion on August 23, 2002 and again on September 5, 2002.  The court did not issue an opinion with either order.  On December 13, 2002 Briscoe moved for entry of judgment in his favor on his motion for leave to file a second petition because the state had not opposed his motion and also moved for

7

findings of fact and conclusions of law.  The trial court denied this motion on February 3, 2003.

Briscoe filed a petition for a federal writ of habeas corpus on December 6, 2002.  He

asserts six grounds for relief in his petition:

> A. GROUND ONE: CONVICTION OBTAINED IN VIOLATION OF THE PROTECTION
> AGAINST CONVICTION EXCEPT UPON PROOF BEYOND A REASONABLE
> DOUBT, UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S.
> CONSTITUTION.
>
> B. GROUND TWO: CONVICTION OBTAINED BY A VIOLATION OF THE PRIVILEGE
> OF CONFRONTATION AND THE RIGHT TO COUNSEL, UNDER THE FIFTH, SIXTH
> AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION.
>
> C. GROUND THREE:  CONVICTION OBTAINED BY INADMISSIBLE AND
> PREJUDICIAL HEARSAY EVIDENCE, UNDER THE FIFTH, SIXTH AND
> FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION.
>
> D. GROUND FOUR:  PETITIONER WAS DENIED APPELLATE COUNSEL, DUE
> PROCESS AND EQUAL PROTECTION, UNDER THE SIXTH AND FOURTEENTH
> AMENDMENTS TO THE U.S. CONSTITUTION.
>
> E. GROUND FIVE:  PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF
> APPELLATE COUNSEL, DUE PROCESS, AND A FAIR APPEAL AS OF RIGHT,
> UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE U.S.
> CONSTITUTION.
>
> F. GROUND SIX:  TRIAL COUNSEL DENIED PETITIONER EFFECTIVE
> ASSISTANCE OF COUNSEL AND A FAIR TRIAL GUARANTEED UNDER THE
> FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION.

On August 19, 2003 the magistrate judge recommended that the petition be denied as time

barred.  Briscoe filed objections the magistrate's report and recommendation on August 27,

2003.  The district court adopted the report and recommendation and denied Briscoe's

petition on September 25, 2003.

On October 27, 2003 Briscoe filed a notice of appeal to the Sixth Circuit court of

appeals, asserting that his petition was not barred by the relevant statute of limitations.  On

February 28, 2005 the Sixth Circuit issued a mandate vacating the judgment of the district

court and remanding the case to the district court for further consideration.

On May 9, 2005 Respondent filed an Answer/Return of Writ (Docket #40).  Briscoe has

failed to file a Traverse by the extended deadline of August 10, 2005.[2]  Thus, the petition is

ready for decision.

II

*A.  Jurisdiction*

Petitioner is in the custody of the State of Ohio at the Grafton Correctional Institution

in Grafton, Ohio.  Petitioner filed his writ of habeas corpus in the Northern District of Ohio and

raises claims regarding the constitutionality of his incarceration under 28 U.S.C. § 2254.

> Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the
> district courts and any circuit judge within their respective jurisdictions. . . . Where an
> application for a writ of habeas corpus is made by a person in custody under the
> judgment and sentence of a State court of a State which contains two or more Federal
> judicial districts,  the application may be filed in the district court for the district wherein
> such person is in custody or in the district court for the district within which the State
> court was held which convicted and sentenced him and each of such district courts
> shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2254(a)&(d).  This court has jurisdiction over Briscoe's petition.

Respondent argues, however, that this court does not have jurisdiction over Briscoe's

fourth ground for relief because the claims stated in that ground are not cognizable in federal

habeas corpus.  In his fourth ground for relief Briscoe claims that he was denied appellate

counsel, due process, and equal protection when the State of Ohio failed to appoint appellate

---

[2]  The magistrate judge notes, however, Briscoe's Traverse filed on May 21, 2003
(Docket # 20) and will consider the arguments contained in that filing in determining the merits
of Briscoe's petition.

9

counsel for his appeal as of right to the Ohio Supreme Court or for his application for reopening his appeal to the state appellate court pursuant to Ohio App. R. 26(B) ("R. 26(B)"). Respondent asserts that these claims are not cognizable in federal habeas corpus because Briscoe is not entitled to an attorney when appealing to the Ohio Supreme Court or when applying to reopen an appeal pursuant to R. 26(B).

Briscoe is clearly not entitled to an attorney when appealing from an Ohio court of appeals to the Ohio Supreme Court. A state affording an indigent appellant an appeal in a criminal case must supply that appellant with an attorney, but "[t]his right to counsel is limited to the first appeal as of right." *Evitts v. Lucey*, 469 U.S. 387, 393 (1985) (citing *Ross v. Moffitt,* 417 U.S. 600 (1974)). An appeal to the Ohio Supreme Court from a state appellate court is not a first appeal nor is it an appeal of right. *See* Ohio App. R. 4 and Ohio S. Ct. Prac. R. II, Sec. 1(A)(1) (describing appeals of right) and Ohio S. Ct. Prac. R. II, Sec. 1(A)(2)-(3) (denominating appeals from the state appellate courts and invoking a substantial constitutional question or a question of general public interest as a *claimed* appeal of right or a discretionary appeal). Briscoe's appeal to the state appellate court was his first appeal. His appeal of that court's decision to the Ohio Supreme Court was his second appeal. Briscoe contended on this appeal to the Ohio Supreme Court that his appeal invoked a substantial constitutional question or a question of general public interest. These claims made his appeal a *claimed* appeal of right or a discretionary appeal. The Ohio Supreme Court declined jurisdiction to hear Briscoe's appeal, thus rejecting his claim of an appeal of right. As Briscoe's appeal to the Ohio Supreme Court was neither a first appeal nor an appeal of

10

right, he was not constitutionally entitled to the assistance of counsel in preparing his appeals.

Nor was Briscoe entitled to the assistance of counsel in preparing his motion to reopen his first appeal of right pursuant to R. 26(B).  The Sixth Circuit held in *White v. Schotten,* 201 F.3d 743, 752-53 (6th Cir. 2000), that an application to reopen pursuant to R. 26(B) was part of the direct appeal, that a defendant was constitutionally entitled to counsel in preparing an application pursuant to R. 26(B), and that ineffective assistance of appellate counsel in preparing the application could serve as cause to excuse noncompliance with Rule 26(B). In *Lopez v. Wilson,* 355 F.3d 931, 937-38 (6th Cir. 2004), however, the Sixth Circuit cast doubt on whether *White's* holding survives the more deferential standard of review required by the Antiterrorism and Effective Death Penalty Act.  *Lopez* was later vacated by the Sixth Circuit, and review is still pending in that case.  *See Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005).

The Ohio Supreme Court has not been silent on this issue.  Recently, that court has held as follows:

> [W]e respectfully disagree with the characterization given to App. R. 26(B) nearly five years ago by the United States Court of Appeals for the Sixth Circuit.  That court described the App. R.  26(B) process as "a continuation of activities related to the direct appeal itself" and explained further that "[b]ecause a defendant is entitled to effective assistance of counsel on direct appeal, . . . such an individual must be accorded effective assistance of counsel" to file an App. R. 26(B) application. *White v. Schotten* (C.A. 6, 2000), 201 F.3d 743, 752-753.
>
> As the United States Court of Appeals for the Sixth Circuit has noted:  "In Ohio courts, the response to *White* was unanimously hostile." *Lambert v. Warden* (C.A. 6, 2003), 81 Fed. Appx. 1, 5, 2003 WL 22071466. Accord *Eads v. Morgan* (N.D. Ohio 2003), 298 F. Supp.2d 698, 705 (noting the "overwhelmingly unfavorable" response of Ohio courts of appeals to *White v. Schotten*).  In numerous decisions, the Ohio courts of appeals have concluded that the App. R. 26(B) process is not part of the

original appeal but instead is a separate and collateral postconviction process.  See, e.g., *State v. Worrell*, Cuyahoga App. No. 80871, 2003-Ohio-4560, 2003 WL 22019526 ("An application to reopen pursuant to App. R. 26(B) is in nature a postconviction petition"); *State v. Collins*, Franklin App. No. 00AP-650, 2002-Ohio-201, 2002 WL 77117; *State v. Dozier* (Jan. 3, 2002), Cuyahoga App. Nos. 56120 and 56121, 2002 WL 42964; *State v. Bragg* (Nov. 26, 2001), Cuyahoga App. No. 58859, 2001 WL 1671424.  All of the above decisions came after *White v. Schotten* concluded that applications under App. R. 26(B) were not part of the original appeal process under Ohio law.

We have ourselves explicitly and consistently recognized that the App. R. 26(B) process represents a collateral postconviction remedy.  See, e.g., *State v. Robinson* (1996), 74 Ohio St. 3d 1518, 660 N.E.2d 472 (describing the App. R. 26[B] process as a "civil, post-conviction matter"); *State v. Boone* (1996), 74 Ohio St. 3d 1491, 658 N.E.2d 788 (also describing the App. R. 26[B] process as a "civil, post-conviction matter").  Accord *State v. Sproat* (1995), 74 Ohio St. 3d 1442, 656 N.E.2d 342; *State v. Alexander* (1995), 74 Ohio St. 3d 1470, 657 N.E.2d 511; *State v. Kirby* (1995), 72 Ohio St. 3d 1534, 650 N.E.2d 111.  We have used the same descriptive term in numerous other orders.  Our own Rules of Practice reinforce the point, for they refer to "appeals involving postconviction relief, including appeals brought pursuant to * * * App.R. 26(B)."  S. Ct. Prac. R. II(2)(A)(4)(b).

Today, we continue to adhere to the position that the App. R. 26(B) process represents a collateral postconviction remedy and is not part of the original appeal.

*Morgan v. Eads*, 104 Ohio St. 3d 142, 147-48, 818 N.E.2d 1157, 1161-62 (2004).  As the

Ohio Supreme Court stated in *Morgan*,

[I]f an Ohio court of appeals *grants* an application for reopening, App. R. 26(B)(6)(a) directs that court to "appoint counsel to represent the applicant if the applicant is indigent and not currently represented."  That provision of the rule--like the rest of App. R. 26(B)--is not, however, compelled by the United States Constitution.  Ohio has chosen, through App. R. 26(B), to create an additional and collateral opportunity for raising ineffective-appellate-counsel claims after the appeal as of right is finished.  And Ohio has chosen to provide in that rule for the appointment of counsel only for an indigent defendant who raises a "genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal."  App. R. 26(B)(5).

The Supreme Court of the United States has "declined to extend the right to counsel beyond the first appeal of a criminal conviction."  *Coleman v. Thompson* (1991), 501 U.S. 722, 756, 111 S. Ct. 2546, 115 L. Ed. 2d 640.  And nothing in the

12

United States Constitution requires that the state provide counsel to every indigent criminal defendant who wants to challenge the work of his or her original appellate attorney.  See *Pennsylvania v. Finley* (1987), 481 U.S. 551, 555, 107 S. Ct. 1990, 95 L. Ed. 2d 539 ("the right to appointed counsel extends to the first appeal of right, and no further").

Similarly, we have never recognized in our decisions that an indigent accused has a constitutional right to a second appellate lawyer to challenge the effectiveness of his original appellate counsel.  If we were to so hold, then logically an accused would have a constitutional right to yet a third appellate lawyer to challenge the adequacy of representation of his second appellate lawyer, and so on ad infinitum.  We reject such an approach precisely because the App. R. 26(B) process is not a part of the direct appeal.  "[N]either the fundamental fairness required by the Due Process Clause nor the Fourteenth Amendment's equal protection guarantee necessitated that States provide counsel in state discretionary appeals where defendants already had one appeal as of right."  *Coleman v. Thompson,* 501 U.S. at 756, 111 S. Ct. 2546, 115 L. Ed. 2d 640. See, also, *Jackson v. Johnson* (C.A. 5, 2000), 217 F.3d 360, 363-364 (rejecting a state prisoner's argument that "his opportunity to file a motion for rehearing should be considered the last step in his first appeal of right," and noting that "a holding to that effect would surely create a new rule of constitutional law"); *Kitchen v. United States* (C.A. 7, 2000), 227 F.3d 1014, 1018 ("once the direct appeal has been decided, the right to counsel no longer applies").

*Morgan*, 104 Ohio St. 3d at 146, 818 N.E.2d at 1160-61.

In the absence of an opinion to the contrary from the Sixth Circuit after *Morgan*, the magistrate judge concludes that Ohio caselaw denominates an application filed pursuant to R. 26(B) as a collateral proceeding to which the right to an attorney does not attach.  The magistrate judge recommends, therefore, that the court conclude that a claim for relief based on Ohio's failure to appoint an attorney to assist with an application to reopen pursuant to R. 26(B) is not cognizable in federal habeas corpus and dismiss Briscoe's fourth ground for relief for lack of jurisdiction.

B.      *Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances

13

when the factual basis of a claim has not been adequately developed in state court proceedings.  28 U.S.C. § 2254(e)(2).  There is no need for an evidentiary hearing in the instant case.  All of Briscoe's claims involve legal issues which can be independently resolved without additional factual inquiry.

C.     *Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus.  28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain available, the petitioner has not exhausted state remedies.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies.  *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989). "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986).  The exhaustion requirement is satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

Briscoe has exhausted direct appeals for all his claims.  Because Briscoe has no remaining state remedies available, his claims have been exhausted.

D.     *Procedural default*

14

Procedural default occurs when a petitioner fails to present fairly his or her constitutional claims to the highest state court in a federal constitutional context. *Anderson*, 489 U.S. 4; *Picard*, 404 U.S. 270. Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "The miscarriage of justice exception is concerned with actual as compared to legal innocence." *Byrd v. Collins*, 209 F.3d 486, 521 n.34 (6th Cir. 2000) (quoting *Calderon v. Thompson*, 523 U.S. 538 (1998)).

If the state argues that a petitioner has procedurally defaulted, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

15

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  A default will also be excused if petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.

Respondent contends that Briscoe has procedurally defaulted ground one, part of ground two, part of ground five, and ground six.

A.      *Ground one:  Conviction beyond a reasonable doubt*

Respondent argues that to the extent that Briscoe's first ground for relief is cognizable in federal habeas corpus, it is procedurally defaulted.  In his first ground for relief, Briscoe contends that his conviction violated the fifth and fourteenth amendments to the constitution requiring conviction beyond a reasonable doubt.  The due process clause of the Fourteenth Amendment requires that a criminal conviction be based upon proof beyond a reasonable doubt as to every fact necessary to constitute the offense charged.  *In re Winship*, 397 U.S. 358, 363-64 (1970).  The test of whether a conviction is supported by sufficient evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  A habeas court resolves all conflicting inferences in favor of the prosecution and does not weigh the credibility of witnesses.  *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir.), *cert. denied*, 464 U.S. 962 (1983).  The evidence need not be sufficient to convince the habeas court of the petitioner's guilt beyond a reasonable doubt.  *Fuller v. Anderson*, 662 F.2d 420, 435 (6th Cir. 1981), *cert. denied*, 455 U.S. 1028 (1982).  Any conviction based upon evidence sufficient to convince any rational trier of fact of

16

the essential elements of the crime without a reasonable doubt offends the due process clause and may serve as grounds for habeas relief.

When Briscoe raised his corresponding claim in the state appellate court on direct appeal, he asserted that his conviction was against the manifest weight of the evidence.  A claim that a conviction is against the manifest weight of the evidence differs from a claim that a conviction was based on insufficient evidence:

> With respect to sufficiency of the evidence, "'sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." Black's Law Dictionary (6 Ed.1990) 1433. See, also, Crim. R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction).  In essence, sufficiency is a test of adequacy.  Whether the evidence is legally sufficient to sustain a verdict is a question of law.  *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148.  In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. *Tibbs v. Florida* (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

> Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. *Robinson, supra,* 162 Ohio St. at 487, 55 O.O. at 388-389, 124 N.E.2d at 149.  Weight of the evidence concerns "the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other.  It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them.  Weight is not a question of mathematics, but depends on its *effect in inducing belief.*"  (Emphasis added.) Black's, *supra,* at 1594.

> When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony.  *Tibbs,* 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661.  See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all

17

reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

*State of Ohio v. Thompkins*, 78 Ohio St. 3d 380, 387-88, 678 N.E.2d 541, 546-47 (1997).

*See also Tibbs v. Florida*, 457 U.S. 31, 37-38, 38 n.11 (1982); *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979).

A federal court reviewing a petition for a writ of habeas corpus has no authority to re-weigh the credibility of witnesses at trial.  *Marshall v. Lonberger*, 459 U.S. 422 (1983).  It is incapable, therefore, of determining whether a conviction was against the manifest weight of the evidence.  It may only determine whether a conviction was based on *sufficient* evidence.

Briscoe's claim in the state appellate court that his conviction was against the manifest weight of the evidence, therefore, is not cognizable in federal habeas corpus, and it is not the claim he raised in the Ohio Supreme Court or the claim he raises here.  Briscoe argued in the Ohio Supreme Court that the verdicts against him were against the weight of the evidence and violated due process.  Under Ohio law, a criminal constitutional question cannot ordinarily be raised in the Ohio Supreme Court unless it is first presented in the court below.  *State v. Jester*, 32 Ohio St. 3d, 147, 154, 512 N.E. 2d 962 (1987).  It is unlikely that the Ohio Supreme Court would reach the merits of claims that were not raised in the underlying appellate proceeding.  Where the state courts are silent as to the reasons for denying a petitioner's due process claim, the Sixth Circuit has applied the presumption that the state court "would not have ignored its own procedural rules and would have enforced the procedural bar."  *Simpson*

*v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996).  Thus, this court must assume that the Ohio Supreme Court regarded Briscoe's due process argument procedurally barred because he failed to raise it in the state appellate court.[3]

Because Briscoe failed properly to raise his claim that his conviction violated the Fifth and Fourteenth Amendments to the constitution requiring conviction beyond a reasonable doubt in the highest court in Ohio, Briscoe has procedurally defaulted the constitutional claim that he raises in ground one.  Briscoe does not argue that Ohio's rule requiring an appellant to raise claims in the appellate court before raising them in the state supreme court is not an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim, nor does he demonstrate cause for failing to raise the federal constitutional claim in the state court of appeals.  There are no grounds, therefore, for excusing Briscoe's procedural default.  For these reasons the magistrate judge recommends that the court overrule as procedurally defaulted Briscoe's first ground for relief.

B.     *Ground two:  Violations of the right to counsel*

Briscoe contends in his second ground for relief that the limitations imposed by the trial court on his cross-examination of the state's medical expert, Thompson, and limitations imposed on his closing arguments violated his right to confront the witnesses against him and his right to effective assistance of counsel.  Respondent argues that Briscoe has procedurally defaulted his claim that the trial violated his right to effective assistance of counsel.

---

[3]  In fact, although Briscoe asserted that the conviction violated due process in the heading of his argument to the Ohio Supreme Court, he cited no cases in support of his contention and did not refer to it in the body of his argument.

19

In arguing his corresponding state claim in the state appellate court, Briscoe argued that the limitations imposed by the trial court violated his Sixth Amendment right to confront the witnesses against him and his rights under the Fifth and Fourteenth Amendments.[4] In the Ohio Supreme Court Briscoe argues that the trial court had violated his right to confront witnesses and his right to due process.[5] He did not argue in either court that the limitations imposed by the trial court also violated his Sixth Amendment right to the effective assistance of counsel.

Briscoe failed properly to raise his claim that his conviction violated his Sixth Amendment right to the effective assistance of counsel in the highest court in Ohio. Briscoe, therefore, has procedurally defaulted this claim. Briscoe does not demonstrate cause for failing to raise this federal constitutional claim in the state courts. Thus there are no grounds for excusing Briscoe's procedural default. For these reasons the magistrate judge recommends that the court overrule as procedurally defaulted Briscoe's claim in his second ground for relief that his conviction violated his right to the effective assistance of counsel.

C.    *Ground five: Violations of rights to appellate counsel, due process, and a fair appeal*

Briscoe contends in his fifth ground for relief that he was denied effective assistance of appellate counsel, due process, and a fair appeal because appellate counsel (1) failed to preserve a complete transcript of the trial or to correct or recreate the transcripts regarding

---

[4]  Briscoe did not specify which rights protected by the Fifth and Fourteenth Amendments had been violated.

[5]  Again, Briscoe asserted a due process claim in the heading to his argument but did not reference or support this claim in the body of his argument.

20

trial counsel's alleged statements that he believed testimony given by R. against Briscoe and (2) had a conflict of interest with trial counsel which prevented him from raising other claims of ineffective assistance of trial counsel. Respondent argues that Briscoe has procedurally defaulted his claim that he was denied effective assistance of appellate counsel for failure to pursue any claims of ineffective assistance of trial counsel other than the alleged statements of credibility of R.'s testimony.

In arguing his corresponding state claim in the Ohio Supreme Court, Briscoe contended that his appellate counsel had been ineffective because he failed to preserve or recreate a complete trial record needed to prove ineffective assistance of trial counsel regarding trial counsel's alleged statements of belief in R.'s testimony. He did not argue that appellate counsel had been ineffective in any other respect.

Briscoe failed properly to raise any claim of ineffective assistance of appellate counsel other than appellate counsel's failure to preserve or recreate evidence of trial counsel's alleged statements regarding R.'s testimony. Briscoe attempted to raise other claims of ineffective assistance of appellate counsel in his motion pursuant to R. 26(B), but the state appellate court found these claims to be barred by *res judicata*. Despite Briscoe's claims to the contrary,[6] Ohio's rule of *res judicata* is an adequate and independent state ground upon which it may bar consideration of claims. *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001);

---

[6] Briscoe argues, *inter alia*, that application of the doctrine of *res judicata* is unjust where appellant has put forward a colorable claim of ineffective assistance of appellate counsel, citing *State v. Murnahan*, 63 Ohio St. 3d 60, 584 N.E.2d 1204 (1992). *Murnahan* is inapplicable here, however, as Briscoe has procedurally defaulted or failed to raise within the court's cognizance a colorable claim of ineffective assistance of appellate counsel.

21

*see also Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). For this reason, Briscoe never properly raised these claims in the state appellate court, which precluded him from properly raising them in the Ohio Supreme Court. Thus, this court must assume that the Ohio Supreme Court's refusal to hear these claims was the result of its enforcement of the Ohio rule that appellants must properly raise claims in the state appellate court before they may raise them in the Ohio Supreme Court. Briscoe has procedurally defaulted, therefore, any claim of ineffective assistance of appellate counsel other than the claim that appellate counsel failed to preserve or recreate a trial record related to trial counsel remarks about R.'s testimony.

Briscoe does not demonstrate cause for failing properly to raise his other claims of ineffective assistance of appellate counsel in the Ohio Supreme Court. Briscoe does not assert, therefore, any grounds for excusing his procedural default. For these reasons the magistrate judge recommends that the court overrule as procedurally defaulted Briscoe's claims in his fifth ground for relief other than his claim that he was denied effective assistance of appellate counsel, due process, and a fair appeal because appellate counsel failed to preserve or recreate a complete trial record of trial counsel's alleged statements of belief in R.'s testimony.

D.     *Ground six:  Ineffective assistance of trial counsel*

Briscoe contends in his sixth ground for relief that he was denied effective assistance of trial counsel. Respondent argues that Briscoe has procedurally defaulted this claim.

Briscoe raised his claim of ineffective assistance of trial counsel in the state appellate court pursuant to R. 26(B). As already noted, the state appellate court found these claims to be barred by *res judicata*, and the holding in *Jacobs* establishes that *res judicata* is an

adequate and independent state ground upon which Ohio may bar consideration of claims. For this reason, Briscoe never properly raised a claim of ineffective assistance of trial counsel in the state appellate court, which precluded him from properly raising that claim in the Ohio Supreme Court. Thus, this court must assume that the Ohio Supreme Court's refusal to hear Briscoe's claim of ineffective assistance of trial counsel was the result of its enforcement of the Ohio rule that appellants must properly raise claims in the state appellate court before they may raise them in the Ohio Supreme Court. Briscoe has procedurally defaulted, therefore, any claim of ineffective assistance of trial counsel.

Briscoe does not demonstrate cause for failing properly to raise this claim in the state courts. There is no ground, therefore, for excusing Briscoe's procedural default. For these reasons the magistrate judge recommends that the court overrule as procedurally defaulted Briscoe's sixth ground for relief.

III

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus. As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the

state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence. *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000); *Miller v. Francis*, 269 F.3d 609, 613-14 (6th Cir. 2001). Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction. *Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000).

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* ... clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 405 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.*  "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases."  *Id.*  A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *Doan v. Brigano*, 237 F.3d 722, 729-31 (6th Cir. 2001).  If a court fails to identify the correct legal

24

principal at issue, the "unreasonable application of" clause does not apply.  *Id.* at 730.

"[A] determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The petitioner, however, may rebut "the presumption of correctness by clear and convincing evidence."  *Id.*  The magistrate judge will consider Briscoe's remaining claims under the deferential standard of review accorded the state court's determination of a prisoner's constitutional claims.

A.   *Ground two: Violation of the right of confrontation by limitation of cross examination and closing argument*

Briscoe contends in the remaining portion of his second ground for relief that the limitations imposed by the trial court on his cross-examination of the state's medical expert, Thompson, and limitations imposed on his closing arguments violated his Sixth Amendment right to confront the witnesses against him.  Respondent denies that the trial court denied Briscoe his right to confront the witnesses against him.

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI.  This includes a right to cross-examine:

> An essential component of the confrontation clause is the accused's right to cross-examine the state's witnesses.  *Davis v. Alaska,* 415 U.S. 308, 315-16 (1974).  However, the Sixth Amendment "guarantees an *opportunity* for effective cross examination, not cross examination that is effective in whatever way, and to whatever extent, the defense might wish."  *Delaware v. Fensterer,* 474 U.S. 15, 20 (1985) (*per curiam* ).  As we have recognized, "a trial court has discretion to limit the scope of cross-examination. . . . This includes discretion to impose limits based on concerns about harassment, prejudice, confusion of the issues . . . or interrogation that is repetitive or only marginally relevant."  *Boggs v. Collins,* 226 F.3d 728, 736 (6th Cir. 2000), *cert. denied,* 532 U.S. 913 (2001) (citing *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)).

25

In addition, it is the state's prerogative to define what evidence is relevant to the case in the first place. *See Jackson v. Virginia,* 443 U.S. 307, 324 n.16 (1979) (recognizing "the power of the States to define criminal offenses"); *see also Montana v. Egelhoff,* 518 U.S. 37, 58 (1996) (Ginsburg, J., concurring) ("States enjoy wide latitude in defining the elements of criminal offenses.") (citations omitted). Indeed, this Court "must defer to a state court's interpretation of its own rules of evidence and procedure" when assessing a habeas petition. *Allen v. Morris,* 845 F.2d 610, 614 (6th Cir. 1988), *cert. denied,* 488 U.S. 1011 (1989) (citation omitted); *see also Duffel v. Dutton,* 785 F.2d 131, 133 (6th Cir. 1986).

*Miskel v. Karnes*, 397 F.3d 446, 452-53 (6th Cir. 2005) (footnote omitted).

Violations of the confrontation clause are subject to harmless error review. *Jordan v. Hurley*, 397 F.3d 360 (6th Cir. 2005). When reviewing violations of the confrontation clause or other errors implicating trial procedures, the reviewing court uses the standard enunciated in *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993). In *Brecht*, the Supreme Court held that a court considering a collateral review of a conviction should weigh constitutional "trial error"[7] by (1) evaluating the error in the context of the entire record; (2) asking whether the trial error had a substantial and injurious effect on the jury's verdict, and (3) granting relief only if there

---

[7] According to the Supreme Court,

[t]rial error "occur[s] during the presentation of the case to the jury," and is amenable to harmless-error analysis because it "may . . . be quantitatively assessed in the context of other evidence presented in order to determine [the effect it had on the trial]." [*Arizona v. Fulminante,* 499 U.S. 279, 307-08 (1991)]. At the other end of the spectrum of constitutional errors lie "structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards." *Id.* at 309. The existence of such defects--deprivation of the right to counsel, for example--requires automatic reversal of the conviction because they infect the entire trial process. See *id.,* at 309-310. Since our landmark decision in *Chapman v. California,* 386 U.S. 18 (1967), we have applied the harmless-beyond-a-reasonable-doubt standard in reviewing claims of constitutional error of the trial type.

*Brecht*, 507 U.S. at 629-30.

was grave doubt about whether the error was harmless. *Id.* at 638. A court may not grant habeas relief unless it believes that the error had a substantial and injurious effect on the jury's verdict. *Kyles v. Whitley*, 514 U.S. 419, 436 (1995).

In examining this claim on direct appeal, the state appellate court made the following findings of fact and law:

> Brisco attempted to establish and argue that Thompson believed R. had been sexually abused repeatedly, and more recently from December 1995. Brisco claims that Thompson's opinion was admissible as evidence analogous to that showing "the origin of semen," pursuant to R.C. 2907.02(D). The State argues that the judge properly excluded such questioning and argument pursuant to the rape shield statute, R.C. 2907.02(D), which states:

> (D) Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

> The rape shield statute is not always applied literally, as in some instances it might infringe upon a defendant's constitutional right to confront witnesses. To protect the defendant's constitutional right, the trial judge must balance the purpose of the evidence and its probative value against the interests protected by the rape shield statute. *Id.*

> *       *       *       *       *

> The judge has discretion to determine the relevance of the evidence and apply R.C. 2907.02(D) in the first instance, and we therefore review the judge's action for abuse of discretion. However, although the confrontation right is flexible enough to allow a judge to exercise discretion in admitting evidence, our review of the constitutional question, should it become necessary, is *de novo*.

> Brisco contends the State introduced Thompson's testimony that R. had been sexually abused to support R.'s testimony that Brisco had raped her. However, he claims, if Thompson had expressed an opinion that R.'s physical condition was probably caused by events other than those occurring in December 1995, that opinion

27

would no longer support R.'s testimony. He argues he did not seek to introduce the testimony in order to unduly harass or put R. on trial, but instead was attempting to introduce evidence of another offender and, therefore, this evidence would not be used against R. in the same way evidence of other consensual partners would be used against an adult victim. It is his position that the evidence substantially could have eroded or destroyed Thompson's testimony as support for R.'s testimony, and because it injected the possibility that R. had misidentified her abuser, its probative value was not outweighed by its prejudicial nature.

In *State v. Ferguson* (1983), 5 Ohio St.3d 160, 164, 450 N.E.2d 265, 268, an attempt to introduce evidence of a victim's sexual activity, if it is offered simply to impeach the victim's credibility, was prohibited. Moreover, a decision to apply the rape shield law is within the discretion of the judge. Based upon the record in this case, it cannot be said that Brisco was prejudiced by the limitation of questions posed to Thompson nor by a limitation on his closing argument. He had a substantial opportunity to examine the expert and was allowed to argue it enough to get his point across to the jury. It appears that the issue of the child's subsequent sexual activity was not relevant to whether Brisco had raped her in December of 1995 and the clear purpose was to attack her credibility. We find no abuse of discretion and overrule this assignment of error.

*Brisco*, Case no. 76125 at 10-13 (citations omitted).

Briscoe cites no holding of the Supreme Court on substantially identical facts which demonstrates that the limitations placed on the cross-examination of the medical expert and on his closing arguments violated his right to confront the witnesses against him. Moreover, the state appellate court found that Briscoe was not prejudiced by the limitations the trial court imposed on Briscoe's cross-examination of Thompson or on Briscoe's closing argument. This finding of fact by the state court is presumed correct, and Briscoe must rebut that presumption by clear and convincing evidence. Briscoe contends that the trial court's sustaining of the State's objections to the cross-examination of Thompson and to Briscoe's closing argument, combined with the instructions to the jury, kept them from considering alternatives to Briscoe as rapist. While this is a possibility, Briscoe's argument falls far short

28

of showing by clear and convincing evidence that the state appellate court erred in finding that any alleged violation of the confrontation clause was harmless.  Because Briscoe fails to establish that his right to confront the witnesses against him was violated and because he fails to show that any such alleged error was prejudicial, the magistrate judge recommends that the court overrule Briscoe's second ground for relief.

B.      *Ground three:  Violation of the right of confrontation and the right to due process by admitting hearsay*

        Briscoe argues in his third assignment of error that his due process right to a fair trial and his right to confront the witnesses against him were violated by admission of J.W.'s testimony and by admission of Thompson's medical records.  Respondent denies that the admission of either of these into evidence violated Briscoe's rights to due process and to confront the witnesses against him.

        Errors in applying state law, especially rulings regarding the admission or exclusion of evidence, are usually not cognizable in federal habeas corpus.  *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988).  However, where the violation of a state's evidentiary rule results in a denial of fundamental fairness and due process, a court may grant federal habeas relief. *Id.*

        The right to a fair trial is a right implicit in the due process clauses of the Fifth and Fourteenth Amendments.  *See United States v. Agurs*, 427 U.S. 97, 107 (1976).   The analysis of alleged violations of the right is identical under either amendment.  *Id.*  "A fair trial in a fair tribunal is a basic requirement of due process."  *In re Murchison*, 349 U.S. 133, 136 (1955).  "[A] fair trial is one in which evidence subject to adversarial testing is presented to an

29

impartial tribunal for resolution of issues defined in advance of the proceeding." *Strickland v. Washington*, 466 U.S. 668, 684 (1984). "Every procedure which would offer a possible temptation to the average man as a judge . . . not to hold the balance nice, clear, and true between the State and the accused denies the latter due process of law." *Murchison*, 349 U.S. at 136 (quoting *Tumey v. State of Ohio*, 273 U.S. 510, 532 (1927)).

Habeas relief is not granted automatically, however, whenever the due process right to a fair trial is violated. Violations of the right to a fair trial, as with violations of the right to confront opposing witnesses, are subject to harmless error analysis using the standard enunciated in *Brecht*. A petitioner alleging either violation is entitled to habeas relief only if the error had a substantial and injurious effect on the jury's verdict. *Kyles*, 514 U.S. at 436.

Briscoe contends here that the judge improperly allowed R.'s cousin, J.W., to testify that R. told him that she had been raped and further complains that it was improper to admit the records of Thompson's examination of R. Briscoe argues that the court improperly admitted this hearsay evidence, violating his due process right to a fair trial and his right to confront the witnesses against him. In reviewing the corresponding claim in state court, the appellate court reviewing Briscoe's direct appeal made the following findings of fact and law:

> Brisco contends here that the judge improperly allowed R.'s cousin, J.W., to testify that R. told him she had been raped, and further complains that it was improper to admit the records of Thompson's examination of R. on the basis of hearsay and the denial of his constitutional right to confront witnesses against him. The State counters that the testimony of R.'s cousin was admitted pursuant to Evid.R. 801(D)(1)(b), as a prior consistent statement "offered to rebut an express or implied charge against (R) of recent fabrication or improper influence or motive." Brisco claims, however, that this limited hearsay exclusion was inapplicable because his lawyer had not charged R. with fabricating her testimony.

30

Our review of the record reveals that Brisco's lawyer questioned R. about the number of people she had spoken to since disclosing the alleged raped to her mother. She admitted that she spoke with three different women at the courthouse about her rape, that the women had given her anatomically correct dolls to help her tell her story, that it became easier for R. to tell her story each time she did it, and that the women had helped R. "remember stuff." The judge did not abuse her discretion in deciding that Brisco's lawyer's questioning implied that R. had been influenced to alter her story; it was not error to allow R.'s cousin to testify about R.'s prior statements, to the extent they were consistent with her testimony.

R. had testified before her cousin had been excused. Brisco claims because she was no longer subject to cross examination on the alleged statement she made to her cousin, that he was denied his right of confrontation. We reject this contention because Brisco has not shown that R. was not subject to cross-examination concerning the statement at the time she testified. Brisco has not claimed that he was unaware of the statement before trial or was surprised by the testimony of R.'s cousin, and, in fact, his lawyer cross-examined R. about whether she had disclosed the rape to her cousin. The record does not support this argument.

Finally, we reject Brisco's claim that the testimony of R.'s cousin should have been excluded as unfairly prejudicial under Evid.R. 403(A). . . . Certainly the testimony was prejudicial to Brisco; however, it was not unfairly prejudicial. The statement was offered after Brisco's lawyer suggested that R.'s testimony had been influenced by adults. Furthermore, we refuse to find that there was any "danger of the jury improperly considering the hearsay as substantive evidence," as claimed in Brisco's brief. Evidence admitted as non-hearsay under Evid.R. 801(D) normally is considered admitted for all purposes, and a limiting instruction is not given. If one wished to argue for a limiting instruction with respect to evidence admitted under Evid.R. 801(D)(1)(b), it is best first to request the limiting instruction before the trial judge. No such request was made below and we, therefore, refuse to search for plain error on the basis of a single sentence in appellant's brief.

We similarly reject Brisco's claims of error based upon the admission of Thompson's medical records as an exhibit because they contained statements from R.'s mother concerning R.'s behavioral changes. The judge allowed into evidence under Evid.R. 803(4), statements made for medical diagnosis. Brisco contends that these statements were not made for the purposes of medical diagnosis, and therefore are not admissible. In support of his contention, he cites *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220.

*Boston* concerned the admissibility of statements made by a two and one half year old child to a psychologist, and questioned whether the child understood the need to give accurate information in order to receive proper diagnosis and treatment. These

31

issues are inapplicable here, as the declarant in this case was not R. herself, but R.'s mother.  In this situation, a child's parent can give a medical professional information for medical diagnosis and treatment of the child, and those statements are admissible under Evid.R. 803(4).

In this case, R.'s mother made statements to Thompson to help Thompson determine whether R. was a victim of sexual abuse.  The medical record indicated that R.'s mother reported R.'s symptoms and behavior that she had observed herself, and that Thompson had requested in order to make a diagnosis.  Furthermore, R.'s mother testified to R.'s symptoms at trial, and was subject to cross-examination.  Any error was harmless and the judge did not abuse her discretion in allowing the exhibit into evidence.

*Brisco*, Case no. 76125 at 6-10 (citations omitted).

Briscoe cites no holding of the Supreme Court on substantially identical facts which demonstrates that admission of J.W.'s testimony and the medical report violated either his due process right to a fair trial or his right to confront the witnesses against him.  Moreover, the state appellate court found that Briscoe (1) had an opportunity to cross-examine R. regarding her statement to J.W.; (2) was not unfairly prejudiced by the admission of J.W.'s testimony, and (3) was not prejudiced by the admission of the medical report.  These findings of fact by the state court are presumed correct, and Briscoe must rebut that presumption by clear and convincing evidence.  Briscoe cites no evidence that the appellate court erred in making these findings of fact.  Because Briscoe fails to establish that his due process right to a fair trial and his right to confront the witnesses against him were violated and because he fails to show that any such alleged errors were prejudicial, the magistrate judge recommends that the court overrule Briscoe's third ground for relief.

C.     *Ground five:  Violation of the right to effective assistance of appellate counsel, the right to due process, and the right to a fair appeal*

Briscoe contends in his fifth ground for relief that he was denied effective assistance

32

of appellate counsel and his due process right to fundamental fairness was violated because appellate counsel failed to preserve a complete transcript of the trial or to correct or recreate the transcripts regarding trial counsel's alleged statements that he believed testimony given by R. against Briscoe.

Defendants have a right to appointed counsel for the first appeal of right.  *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).  The standard enunciated in *Strickland* is applicable to claims of ineffective assistance of appellate counsel.  *See Bowen v. Foltz*, 763 F.2d 191, 194 n.4 (6th Cir. 1985).  A petitioner's counsel was ineffective if "counsel's conduct so undermined the proper functioning of the adversarial process that the [process] cannot be relied on as having produced a just result."  *Strickland*, 466 U.S. at 686; *see also Groseclose v. Bell*, 130 F.3d 1161, 1167 (6th Cir. 1997).  A claim of ineffective assistance of counsel has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687; *see also Groseclose*, 130 F.3d at 1167.

The first prong of this test, the showing of deficient performance, is an objective one: "[T]he proper standard for attorney performance is that of reasonably effective assistance. . . . When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of

33

reasonableness," as judged by "prevailing professional norms." *Strickland*, 466 U.S. 687-88; *see also Groseclose*, 130 F.3d at 1167.  Scrutiny of counsel's performance is highly deferential to avoid second-guessing an adverse decision.  *Strickland*, 466 U.S. at 689; *see also Groseclose*, 130 F.3d at 1167.  The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Groseclose*, 130 F.3d at 1167.

The second prong of the test for ineffective assistance of counsel is whether the error prejudiced petitioner:

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.  The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

*Strickland*, 466 U.S. at 690-91 (citations omitted); *see also Groseclose*, 130 F.3d at 1168. Further "the burden rests on the accused to demonstrate a constitutional violation." *United States v. Cronic*, 466 U.S. 648, 658 (1984).  Showing a constitutional violation requires showing that "counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Nix v. Whiteside*, 475 U.S. 157, 175 (1986). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  A

reviewing court must ask itself "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695; *see also Groseclose*, 130 F.3d at 1168.

In Briscoe's November 20, 2000 application to reopen his direct appeal, Briscoe included the following assignment of error in the brief to the state appellate court:

Assignment of Error IV:  Trial court's failure to make a complete and accurate records [sic] of trial proceedings denied Appellant Due Process and a fair appeal as of right.

*State v. Briscoe,* 2001 WL 931659, at *3 (Ohio App. Aug. 9, 2001).  The state appellate court dismissed Briscoe's application on the grounds of *res judicata*, and the court also found that Briscoe's assignments of error were without merit.  In examining Briscoe's fourth assignment of error, the court found the following:

In assignment of error four, Briscoe claims that, "the trial court's failure to make a complete and accurate records (sic) of trial proceedings denied Appellant Due Process and a fair appeal as of right," and cites what he believed was testified to at trial. After review of the alleged inconsistencies, we do not find any prejudice, nor does Briscoe establish how he was prejudiced.

*Id.* (footnote omitted).

The state appellate court's finding that Briscoe was not prejudiced by any alleged inaccuracy in the state trial transcripts necessarily leads to the conclusion that Briscoe could not have been prejudiced by appellate counsel's alleged failure to "recreate" the supposedly inaccurate records.  The finding by the state court that Briscoe was not prejudiced by the allegedly inaccurate trial record is presumed correct, and Briscoe must rebut that presumption by clear and convincing evidence.  Briscoe cites no evidence that the appellate court erred in finding that he was not prejudiced by the allegedly inaccurate transcript.  Because Briscoe

cannot show that he was prejudiced by appellate counsel's failure to recreate the trial record, he cannot obtain habeas relief as a result of the alleged violations of his right to effective assistance of counsel or, as has already been shown, obtain relief from the alleged violation of his right to due process and fundamental fairness.  For this reason, the magistrate judge recommends that the court overrule Briscoe's fifth ground for relief.


IV

For the above reasons, the magistrate judge recommends that Briscoe's petition for a writ of habeas corpus be dismissed.


Date:  September 30, 2005                    /s/ Patricia A. Hemann
                                             Patricia A. Hemann
                                             United States Magistrate Judge


### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).